[Crim. No. 1729. Second Appellate District, Division One.—February 28, 1929.]

THE PEOPLE, Respondent, v. HARMON TEMPLE, Appellant.

Edgar B. Hervey for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

YORK, J.—The appellant, who shot and killed his father-in-law, G. W. Priest, was found guilty by the jury of the crime of manslaughter, but the appellant contends that the evidence shows conclusively that he had to shoot the deceased in the defense of his own life.

The fact that the evidence shows that the deceased had threatened the life of the appellant and that this threat had been communicated to him by his wife, who was the daughter of the deceased, and the fact that the killing occurred in the home of the appellant, where the deceased had come against the direct order of both the appellant and his wife, has caused us to scan with particular care each of the instructions to the jury.

■ Such an inspection of the instructions discloses the fact that, although several correct instructions that were requested by the appellant were refused by the trial court, nevertheless, in so far as these instructions were proper, they were fully incorporated within the instructions given by the court. The appellant objects generally to the instructions, but we will refer to those instructions set out in appellant's opening brief. His objection is that it was error to instruct the jury: "You are instructed that self defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance or fault, to create a real or apparent necessity for killing. You are further instructed that self defense is not available as a plea to one who, by prearranged duel, or by consent, has entered into a deadly mutual combat in which he slays his adversary. A man may not wickedly nor wilfully invite or create the appearances of necessity of the actual necessity which, if present to one without blame, would justify the homicide."

Appellant also objects to what he calls the second of the instructions, reading as follows: "Whenever an assault is brought upon a person by his own procurement, or under an appearance of hostility which he himself creates, with a view of having his adversary act upon it, and he so acts and is killed, the plea of self defense under such circumstances is unavailing." A modification added by the court to one of defendant's instructions contained the following: " . . . but such person or the person in whose behalf the

defense was made, if he was the assailant or engaged in mortal combat must really and in good faith have endeavored to decline any further struggle before the homicide was committed.'' The objection of the appellant is that there was an utter absence of any evidence that the defendant had ''sought a quarrel'' or engaged in a ''prearranged duel'' or consented to a deadly ''mutual combat'' and that there was no evidence that the appellant brought on or procured an assault, or created an ''appearance of hostility,'' or ''was the assailant,'' or ''engaged in mortal combat.''

The appellant urges that he had no opportunity to withdraw or to ''endeavor to decline'' any ''further struggle'' before the shooting, had such been required of him by law. He claims there was no ''struggle,'' no ''duel,'' no ''combat,'' and not even a ''quarrel,'' and that, therefore, the instructions, appellant contends, were not adapted to the evidence and were, therefore, mere legal abstracts calculated to mislead the jury by diverting their minds from the true issue before them for trial.

The evidence shows that the defendant, who had been warned that the deceased was coming to his home for the purpose of either getting him to admit certain misconduct, or else shooting the defendant, had a shotgun loaded and waiting for the deceased when he arrived; that upon the entry of the deceased into the home of defendant, he attempted to search the deceased for weapons and that when the deceased profanely remonstrated against such search and stepped to one side reaching toward an inside pocket, the defendant grabbed a shotgun and immediately fired point blank at the deceased. The appellant insists that the reason he did not look to see whether or not the deceased was actually drawing a gun from his pocket was that he expected to see fire coming in his direction at any second, and he was attempting to beat the deceased to a draw. That the deceased had raised his coat and had said to him: ''Oh, I am going to shoot you, God damn you!'' and at that moment the appellant reached right over, picked up a shotgun and fired. That he believed the deceased to be armed, but that he did not positively know it; that he believed at that time that he was about to be killed or have great bodily harm done to him. He testified that he had known of several acts of violence committed by deceased, and that at

least two different times to his knowledge the deceased had attempted to commit unprovoked murders, but had been prevented by the intervention of other people.

All of these facts were fully before the jury and the trial court allowed a full and thorough examination of the witnesses on all points material to the matter before the court.

An examination of all of the instructions shows that the jury was thoroughly instructed, and the jury, in view of the instructions given, in order to convict the defendant, must have totally disbelieved his statement as to the fact that he believed he was about to be killed or seriously injured by the deceased, and must have disbelieved *in toto* the defendant's wife, who was a daughter of the deceased. Under the instructions given, the jury could not have brought in the verdict that it did without such disbelief on its part; therefore, in view of the evidence in this case, there was no instruction given which could have caused any injury to the defendant. All of the instructions given, taken together, fully and correctly recite so much of the law as to self-defense as is applicable to the evidence in this case.

We find no errors in the record; the judgment of conviction and order denying motion for new trial are affirmed.

Conrey, P. J., concurred.

HOUSER, J., Dissenting.—I dissent. My principal reason therefor is based upon what, to my mind, is the inapplicability to the facts in the case of either of the instructions as set forth in the majority opinion. The evidence fails to disclose that defendant "*sought a quarrel*," or that if he did so, it was "*with the design to force a deadly issue.*" Nor was there any evidence of any "*fraud, contrivance or fault*" on the part of defendant by which he attempted "*to create a real or apparent necessity for killing.*" No pretense is made that "*by prearranged duel, or by consent*" defendant entered into "*a deadly mutual combat*" with the person who was killed. Nothing can be found in the evidence to warrant the insinuation contained in the instruction that defendant *wickedly or wilfully invited or created* "*the appearance of necessity, or the actual necessity, which, if present to one without blame, would justify the homi-*

*cide.*" In other patent particulars of a similar nature the instructions quoted in the majority opinion were equally faulty in that no evidence was presented upon which they might have been predicated. Especially did such condition prevail with reference to the instruction that "such person or the person in whose behalf the defense was made, *if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed.*"

Considering the premises, the prejudicial effect of the language occurring in such instructions is apparent.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 13, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1929.

All the Justices present concurred.